IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ERICK BLAIR d/b/a FOTOPIXELS                                    PLAINTIFF

          v.                    Civil No. 05-6083

WORLD TROPICS PRODUCTIONS, INC.
d/b/a MISS HAWAIIAN TROPIC;
TANNING RESEARCH LABORATORIES
d/b/a/ HAWAIIAN TROPIC; TRENDS
INTERNATIONAL, INC.; and KEEVIN
TAYLOR                                                        DEFENDANTS

                           O R D E R

    Now on this 19th day of April, 2007, come on for
consideration the following motions:

    *    **TRL's Motion For Summary Judgment Against Plaintiff**
         (document #67);

    *    plaintiff's **Motion For Partial Summary Judgment On The
         Issue Of Vicarious Liability Of Tanning Research
         Laboratories** (document #70);

    *    **Separate Defendants World Tropic Productions, Inc.'s And
         Keevin Taylor's Motion For Summary Judgment** (document
         #74);

    *    **Separate Defendant Trends International, Inc.'s Motion
         For Summary Judgment** (document #77); and

    *    **Plaintiff's Second Motion For Partial Summary Judgment
         Of The Following Issues: (1) Whether Erick Blair Was An
         Independent Contractor; And (2) The Sales And Profits Of**

**World Tropic Productions, Keevin Taylor, And Trends International, Inc. For The Miss Hawaiian Tropic Calendars Containing Plaintiff's Images For 2005 And 2006** (document #79),

and from said motions, the supporting documentation, and the responses thereto, the Court finds and orders as follows:

1. The claims in this convoluted case all relate to alleged copyright infringement having to do with the use of various photographic images. Because the parties, having lived with this case for a long time, tend to assume that everyone is "on the same page" regarding basic facts, it is difficult to follow their submissions without a summary of those basics. The Court believes that it will be helpful to briefly summarize what it understands to be the relationship between the parties, and the nature of each party's claims, before setting forth specific facts which it finds to be undisputed and specific evidence offered by the parties in support of their respective positions.

Tanning Research Laboratories d/b/a Hawaiian Tropic ("TRL") sells sun care products. For promotional purposes, TRL licenses the use of its trademarks to World Tropic Productions, Inc. ("WTP") and Keevin Taylor, who is the sole shareholder of WTP. WTP and Taylor stage "Miss Hawaiian Tropic" contests and pageants (the "Pageants"), and produce "Miss Hawaiian Tropic" calendars (the "Calendars"), using TRL's trademarks. Trends International,

Inc. ("Trends") produces and markets the calendars for WTP and Taylor.

Blair is a photographer who sometimes took photographs -- or shot images, in the current parlance -- of the Pageants and the models who appeared therein. It is Blair's contention that he was hired by WTP and Taylor to photograph "contest events" at the Pageants, and he makes no claim as to the images of such contest events. He further contends, however, that in his free time between photographing contest events, he took photographs of various contestants with the hope that those images would be selected for inclusion in one of the Calenders. This suit involves rights to the images of contestants taken by Blair when the contestants were not engaged in contest events (the "Images").

Blair claims that certain Images were published by WTP, Taylor, and Trends with his authorization, but without giving him proper photographer's credit and without protecting his copyright. He also contends that certain Images were published by WTP, Taylor, and Trends without his authorization. He contends that TRL is liable for the alleged infringement of WTP, Taylor, and Trends, by virtue of contracts between TRL and WTP/Taylor which give TRL a degree of control over the use by WTP/Taylor of the "Hawaiian Tropic" trademark.

WTP counterclaims, contending that Blair has published images as to which WTP holds copyright, those being the Images shot by

Blair while he was working for WTP at the Miss Hawaiian Tropic events.

The various parties now contend that they are entitled to summary judgment on some or all of the issues.

2.  Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States, 31 F.3d 696 (8th Cir. 1994).**  Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp., 45 F.3d 262 (8th Cir. 1995).**  The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute;  however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op, 838 F.2d 268 (8th Cir. 1988).**

3.  Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

*    Erick   Blair   d/b/a   Fotopixels   ("Blair")   is   a

photographer.  He took the photographic images (the "Images") which are the subject of this lawsuit.

* Defendant Tanning Research laboratories d/b/a Hawaiian Tropic ("TRL") sells sun care products.  TRL licenses the use of its trademarks in connection with the publication of swimsuit calendars (the "Calendars") and the production of swimsuit pageants (the "Pageants").

* Defendant Keevin Taylor ("Taylor") is the sole owner of defendant World Tropic Productions, Inc. ("WTP").  WTP and Taylor produce Calendars and Pageants pursuant to licenses from TRL.

* The details of the licensing arrangement for Calendars between WTP/Taylor and TRL are set forth in a document entitled Trademark And Design License Agreement, which is dated January 6, 2005 and was effective from July 1, 2005, to June 30, 2006 (the "License Agreement").  The details of the Pageant production arrangement between WTP/Taylor and TRL are also said to be set forth in a written contract, but no copy of this document appears to have been submitted with any of the motion papers.

* TRL had little to do with the production or distribution of WTP's Calendars.  However, the License Agreement allowed WTP to produce and sell Calendars bearing TRL's trademarks, "provided the quality of [the Calendars] and

the style and placement of the HAWAIIAN TROPIC
trademarks and copyrighted designs on them meet with
[TRL's] approval."  The License Agreement required WTP
to provide "mockup samples" of licensed products prior
to their distribution, and TRL was to "advise WTP in
writing if such mockup sample of merchandise is not
suitable and shall so state in such advisement the
specific reasons why such mockup samples are not
suitable."

*   The License Agreement required WTP to keep records of
    its sales of licensed products, and to make such records
    available to TRL for inspection for up to two years
    after the License Agreement Terminated.

*   Under the License Agreement, TRL had the right to
    inspect the offices of both WTP and Trends, including
    books and records, equipment, materials, and inventory,
    pertaining to the licensed goods.

*   The production of the Pageants involves, among other
    things, licensing the use of images of swimsuit-clad
    models on posters and banners.  TRL did not participate
    in the production of these posters and banners.

*   TRL does not sell any of WTP's Calendars, posters or
    banners, or receive royalty payments on such sales.  The
    License Agreement provides that WTP will pay TRL no

royalty, but will "provide promotional benefits" to TRL.

* The License Agreement provided that WTP was not TRL's agent, partner, joint venturer, servant or employee.

* There is no contract between Blair and TRL.

* The Pageant system is structured to begin with local events, then progress to state and regional events, with finals in Mexico and Hawaii.

* Blair met Taylor at a local WTP Pageant in Memphis, Tennessee, sometime between the late 1990s and 2001. He became aware of WTP's Calendars in 2002.

* Blair took photographs of a WTP Pageant in Memphis in 2002. In 2003, Blair traveled to Cancun, Mexico, at WTP's expense to photograph the WTP Pageant there.

* After the 2003 Cancun trip, Blair obtained approval from Taylor to have business cards printed which identified him as a "Miss Hawaiian Tropic" photographer.

* In September, 2003, Blair photographed WTP events in Memphis, Tennessee; Tunica, Mississippi; and Gulfport, Mississippi. WTP paid Blair's expenses, except for gasoline, on these trips.

* In March and April, 2004, Blair photographed a series of WTP Pageants in Mexico. WTP paid Blair's expenses on these trips.

* During the 2003 and 2004 trips to Mexico, Blair intended

and was expected to take photographs of the Pageant contestants for potential use in the Calendars. These Images are sometimes more specifically referred to as the 2003 Images and the 2004 Images.

* During the 2003 and 2004 trips to Mexico, Blair was introduced at the events as a Hawaiian Tropic photographer. At Taylor's direction, he wore a red Hawaiian Tropic t-shirt and a badge that identified him as "Miss Hawaiian Tropic" staff. He took direction from Taylor for most of his activities, and performed services such as driving a van and hanging banners in addition to taking photographs.

* After each trip to Mexico, Blair would deliver to Taylor a disk with Images shot during the trip. None of these disks, nor any of the Images on the disks, contained a copyright notice. When Taylor asked him to do so, Blair removed some of these Images from Blair's website.

* Blair and Taylor had an oral agreement regarding use of the 2003 Images in the 2005 "Miss Hawaiian Tropic" calendar, but there was no written agreement on the subject.

* Blair also acted as a model scout for WTP, although he did not decide which models went to the Pageants. Blair was not in charge of organizing either the Pageants

themselves, or the activities that took place on the trips.

* WTP (or Taylor) made two monetary payments to Blair. On May 30, 2004, WTP gave Blair a check for $440.00, with a memo indicating that the check was "For Photo Shoot." Blair also received $150.00 in cash from Taylor during the 2004 Mexico trip.

* Neither WTP nor Taylor issued Blair W-2 forms or withheld any type of taxes for Blair, and Blair received no employee benefits from WTP or Taylor.

* On September 16, 2004, Blair's attorney sent a "cease and desist" letter to Taylor, stating that Blair's Images had been used in violation of "a limited license to reproduce, publish, or otherwise use said images provided that his copyright information was clearly reproduced on the image at the time of publication or in the immediate margin." The letter revoked "any and all previous licenses granted to you, World Tropic Productions, Inc. or your agents or assigns."

* The 2005 Calendars were offered for sale by October 9, 2004. Some of Blair's Images appeared in the 2005 Calendars.

* Blair published some of his 2004 Images on his website as early as December 11, 2004.

* The 2006 Calendars were offered for sale by July 10, 2005. Some of Blair's Images appeared in the 2006 Calendars.

* On August 29, 2005, Blair filed a copyright application for the 2004 Images.

* On November 30, 2005, Blair filed a copyright application for the 2003 Images.

4. WTP and Taylor contend that Blair's claims are barred under any of four theories:

* the "work for hire" doctrine;

* the alleged existence of an irrevocable nonexclusive implied license;

* the limited geographical reach of the Copyright Act; or

* the timing of Blair's application for copyright registration.

Trends relies on these same arguments, and in addition contends that Blair's claims as against it are limited by the "innocent infringer" doctrine.

TRL contends that it cannot be held liable to Blair, either on a theory of direct liability or a theory of vicarious liability, because it did not have the requisite degree of control, or financial interest, in the conduct of WTP and Taylor.

Blair contends that he is entitled to summary judgment that he was an independent contractor rather than an employee. He also

seeks a ruling as to the profits of WTP, Taylor, and Trends for the Calendars.

5.    The Copyright Act, **17 U.S.C. §101 et seq.**, provides that "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated . . . . **17 U.S.C. §102.**  The owner of a copyright has the exclusive right to reproduce the copyrighted work; to prepare derivative works based on it; to distribute copies of the copyrighted work to the public; to display the copyrighted work; and to authorize any of these uses of the copyrighted work.  **17 U.S.C. §106.**

Copyright initially vests in the author of the work, **17 U.S.C. §201(a),** and subsists from the point of creation of the work, **17 U.S.C. §302(a).**  In some instances, known as "works made for hire," the employer of the author of the work is considered to be the author of the work.  **17 U.S.C. §201(b).**

The author may obtain registration of copyright, but such registration is not a condition of copyright protection.  **17 U.S.C. §408(a).**  Registration is, however, a condition to the bringing of suit to enforce copyright protection, **17 U.S.C. §411(a),** and bears on the remedies available to the author, **17 U.S.C. §412.**

6.   WTP, Taylor, and Trends contend that Blair's claims must fail pursuant to the "work for hire" doctrine, which provides that

> [i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of [the Copyright Act], and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

**17 U.S.C. §201(b).**

They contend that the Images fall within the definition of a "work made for hire," i.e., "a work prepared by an employee within the scope of his or her employment." **17 U.S.C. §101.**

This contention hinges on Blair holding the status of an "employee" of WTP or Taylor.  Blair, in his Motion, contends that he is entitled to summary judgment that his status was that of an independent contractor, not an employee.

In **Community for Creative Non-Violence v. Reid**, **490 U.S. 730 (1989)**, the Supreme Court listed factors relevant to the determination of employee status, as opposed to independent contractor status, when the "work for hire" doctrine is under analysis.

> In determining whether a hired part is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished.  Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's

-12-

role in hiring and paying assistants; whether the work
is part of the regular business of the hiring party;
whether the hiring party is in business; the provision
of employee benefits; and the tax treatment of the hired
party.

**490 U.S. at 751-52.**

The undisputed facts, combined with evidence placed before
the Court by Taylor himself, do not support a finding that Blair
was the employee of either WTP or Taylor.  Taylor's deposition
testimony makes it clear that neither he nor WTP made any
particular attempt to control the "manner and means by which the
product" of Blair was accomplished.  Taylor testified that he gave
Blair "three years of my production calendars of all formats,
walls, box, minis, of three years for him to use as inspirational
examples of what I was looking for.  I did not specify each thing.
. . . I sent him three previous years and said, This is what I'm
looking for.  Something of that caliber or that type of style."

Other factors listed in **Reid** provide strong support for a
finding that Blair was an independent contractor.  The work done
by Blair required considerable skill, and Blair provided all of
his own tools[1].  Blair did only those projects for WTP and Taylor
that he was specially hired to do, and was free to accept or turn
down assignments when they were offered.  Blair worked for WTP and
Taylor only sporadically (a few weeks each year) and for short

_____

[1]WTP and Taylor claim that Blair occasionally used Taylor's computer to review
Images, but the evidence is uncontroverted that Blair provided all of his own
photographic equipment.

periods of time (the longest being 21 days). Whether or not Blair was paid for his time on the job is disputed, but if he was paid, the amount was very small in relation to the number of hours worked[2] and the skill required. Blair received no employee benefits from WTP or Taylor, and was not treated as an employee for tax purposes. These factors all heavily favor a finding that Blair was an independent contractor.

Only a few factors tend to suggest that Blair was an employee, and the weight to be assigned to those factors is light. WTP and Taylor were in business. However, the taking of photographs was only incidental to the Pageant business and -- while more central to the Calendar business -- was a part of that business which could be handled just as well by an independent contractor as by an employee. WTP and Taylor controlled the location where Blair's work was done, because the photographs were taken in connection with, and therefore at the location of, the Pageants. When working for WTP and Taylor, Blair occasionally helped out in ways other than taking photographs, such as by hanging banners and driving a van.

When the factors which tend to suggest employee status are weighed against those which tend to suggest independent contractor

---

[2]Taylor and WTP take the position that Blair was at their "disposal 24 hours a day" during the trips. One trip lasted three weeks. The total remuneration they lay claim to having paid is $590.00. Blair asserts that of this money, $440.00 was paid to him by Taylor for photographing a wedding, and $150.00 was to reimburse him for the purchase of a swimsuit for one of the models.

status, the Court finds that only one conclusion can be reached: that Blair was an independent contractor. The factors suggesting employee status are *de minimis*, and cannot be said to outweigh the overwhelming evidence that Blair worked in the capacity of an independent contractor for WTP, especially the failure to treat Blair as an employee for tax and benefits purposes. *See* **Kirk v. Harter**, **188 F.3d 1005, 1008 (8th Cir. 1999)**("'every case since *Reid* that has applied the test has found the hired party to be an independent contractor where the hiring party failed to extend benefits or pay social security taxes'"). The Court will, therefore, deny the Motions of WTP, Taylor, and Trends as to the issue of Blair's employment status, and will grant Blair's Motion as to that issue, finding that Blair was an independent contractor of WTP and Taylor, and that the "work for hire" doctrine does not apply to the Images.

7. WTP, Taylor, and Trends contend that, even if Blair was not an employee of WTP or Taylor, he granted WTP and Taylor an irrevocable nonexclusive implied license to use the Images. Their arguments runs thus: Blair traveled to Pageant locations at the expense of WTP or Taylor; after each trip, he delivered disks containing his Images -- without copyright notices -- to Taylor. At the time of delivery, he did not place limits on WTP's or Taylor's use of the Images. He must, therefore, have irrevocably agreed that WTP or Taylor could use the Images any way they chose.

This line of reasoning ignores Blair's testimony that he had an oral agreement with Taylor -- made before delivery of the Images -- that WTP and Taylor could use their choice of the Images on the Calendars, so long as he received photographer's credit, but that he retained the copyright as to each Image. If the finder of fact credits that testimony, it would not matter that the restrictions were not repeated each time a disk was delivered. The lack of copyright notice on the disks is of no consequence, either, because copyright initially vests in the author of the work, **17 U.S.C. §201(a),** and subsists from the point of creation of the work, **17 U.S.C. §302(a).**

The Court finds that a genuine issue of material fact exists with regard to the terms of the agreement between Blair and WTP or Taylor with regard to the use of the Images and the ownership of copyright to the Images. Summary judgment on this issue is, therefore, not merited.

8. WTP, Taylor, and Trends also contend that "certain instances of alleged infringement occurred exclusively in Mexico," specifically the display of banners and posters in Mexico. They contend that the Berne Convention for the Protection of Literary and Artistic Works causes those instances of alleged infringement to be governed by Mexican law, and that Blair has not pled "violations of Mexican Industrial Property Law."

Blair concedes that any acts of infringement occurring in

another country are not encompassed by his pleadings, but contends that the banners and posters allegedly displayed in Mexico were made available to those who displayed them in Mexico by the conduct of WTP and Taylor, which took place in the United States. This amounts to a concession that Trends has no liability on this claim, and the Court will, therefore, grant Trends' motion for summary judgment as to this claim.

As the claim relates to WTP and Taylor, and their alleged liability for making Images available by their conduct in the United States, summary judgment on this issue will be denied.

9.   WTP, Taylor, Trends, and TRL all contend that Blair is precluded from recovering statutory damages and attorney fees, pursuant to **17 U.S.C. §412(1)**, which provides, in relevant part, as follows:

> In any action under this title . . . no award of statutory damages or of attorney's fees . . . shall be made for (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

The Amended Complaint alleges copyright infringement of 31 Images, the copyrights to which were registered at two different times, and which are said to be published in at least five different Calendars. In order to resolve the availability of damages under this provision of the Copyright Act, it will be

-17-

necessary to determine when each individual Image was first published; when its copyright registration was effective; and when any infringement of that particular Image began. The parties have not made a serious attempt to sort out how the various dates on these various Images fit into the parameters of **17 U.S.C. §412(1),** let alone *agree* to how they fit, and the Court declines to undertake this task for them. Summary judgment on this issue will be denied.

10. Trends contends that Blair's claims as against it are limited by the "innocent infringer" doctrine of **17 U.S.C. §504(c)(2),** which provides that "[i]n a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200."

Blair agrees that Trends is an innocent infringer with regard to the 2005 Calendar, but denies that Trends is entitled to that status with regard to the 2006 Calendar. Blair argues that WTP had a contractual duty to advise Trends of "any copyright problems," and that the Images submitted for use in the 2006 Calendar contained copyright notices. Blair contends that the existence of these copyright notices creates a fact question as to whether Trends infringed his copyright.

Blair contends that he is entitled to summary judgment on the issue of the sales and profits of WTP, Taylor, and Trends for the 2005 and 2006 Calendars.

The Court is of the opinion that these arguments are insufficiently developed as to the supporting and detracting evidence, and summary judgment as to it will, therefore, be denied.

11. TRL contends that, given the limitations imposed by its Licensing Agreement with WTP and Taylor, it cannot be held liable for copyright infringement even if WTP and Taylor are found to be liable. TRL contends that it can be held liable neither on a theory of direct infringement, nor on one of vicarious liability.

Blair appears to concede that TRL is not a direct infringer[3], but argues that TRL should be held vicariously liable for the allegedly infringing conduct of WTP and Taylor. He contends that TRL has the right to control the activities of WTP and Taylor pursuant to the License Agreement, and that TRL benefits financially from the activities of WTP and Taylor "as the primary purpose of the pageants, contests, and events is to promote Hawaiian Tropic tanning products."

In **Sony Corp. of America v. Universal City Studios, Inc.**, **464**

---

[3]In his Brief In Support Of Response To TRL's Motion For Summary Judgment, Blair does contend that he "has discovered there was a direct infringement by TRL of at least one image that shows a connection between the two parties that they claim did not exist." The Court does not interpret this as a contention that TRL was a direct infringer, but rather as a contention that the "discovery" supports Blair's indirect infringement argument.

**U.S. 417 (1984),** the Supreme Court explained

> The Copyright Act does not expressly render anyone
> liable for infringement committed by another. . . . The
> absence of such express language in the copyright
> statute does not preclude the imposition of liability
> for copyright infringements on certain parties who have
> not themselves engaged in the infringing activity. For
> vicarious liability is imposed in virtually all areas of
> the law, and the concept of contributory infringement is
> merely a species of the broader problem of identifying
> the circumstances in which it is just to hold one
> individual accountable for the actions of another.

**464 U.S. at 434-35.**

In **Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.**, **545 U.S. 913 (2005),** the Court explained that "[o]ne infringes [copyright] contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." **545 U.S. at 930** (internal citations omitted).

In the Eighth Circuit, it has been held that the "prerequisites" for vicarious copyright infringement are the "right and ability to supervise the infringing activity" and an "obvious and direct financial interest in exploitation of copyright materials." **RCA/Ariola International, Inc. v. Thomas & Grayston Co.**, **845 F.2d 773, 781 (8th Cir. 1988).**

TRL argues that it had no legal control over WTP, Taylor or Trends concerning the Calendars, and no "inclination" to exercise any such control if it existed. TRL contends that the control

provisions in the License Agreement addressed only the "quality" of the Calendars and the "style and placement" of its trademarks, and that it did not exercise even that level of control over the 2005 and 2006 Calendars because "earlier calendars had proven to be of satisfactory quality." TRL also contends that there is no evidence that it profited from "any of the alleged misconduct," because it received no royalties under the License Agreement.

Blair counters that TRL licenses WTP and Taylor to produce the Calendars and Pageants; the contracts as to each type of license give TRL the authority to approve or disapprove the product of WTP and Taylor; and the Calendars and Pageants tend to promote TRL's sun care products. Thus, he reasons, TRL derives economic benefit from publications by WTP and Taylor that TRL can control, bringing the case within the parameters of the doctrine of vicarious liability.

The Court believes that genuine questions of fact exist as to this issue. Whether or not TRL exercised any control, it had the legal right to approve of disapprove of the Calendars before they were published. It also had the right to inspect the offices of WTP and Trends, and the materials located therein. A jury could find from the rights given to TRL by the License Agreement that TRL had the power to have discovered the alleged copyright infringement and disapproved of any Calendar as to which it might be occurring, notwithstanding TRL's lack of "inclination" to do

so.

As for financial interest, TRL's Brief in support of its Motion asserts that "[f]or over 20 years, TRL has maintained a pageant system as a means of promoting the HAWAIIAN TROPIC brand to young women, TRL's primary customers." Ron Rice -- TRL's Owner, President and CEO -- testified that he "dreamed up" the pageant system to market TRL's products to females. He agreed that "the regional director in the pageant system is helping promote Hawaiian Tropic's name." Rice also testified that the company got "a little bit of publicity" out of the Calendars, and that such publicity was the basis for the "zero royalty" provision in the License Agreement.

The finder of fact could conclude, from this evidence, that TRL obtained economic benefit from the Calendars and Pageants produced by WTP and Taylor, even though no money changed hands.

For these reasons, TRL's motion for summary judgment on the issue of vicarious liability will be denied.

13. TRL contends that it cannot be held liable on a breach of contract theory, inasmuch as it had no contract with Blair. Blair concedes this argument, and summary judgment will be granted in favor of TRL on Blair's breach of contract claim.

14. TRL contends that even if it is liable to Blair, Blair is not entitled to any portion of TRL profits as a measure of damages. Blair takes issue with this, in reliance on **Andreas v.**

**Volkswagen of America, Inc.**, 336 F.3d 789 (8th Cir. 2003).

In **Andreas**, the Court explained that "[t]he Copyright Act provides that a copyright holder is entitled to recover his actual damages as well as any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages. The infringer's profits are awarded to the copyright holder to prevent the infringer from unfairly benefiting from a wrongful act." **336 F.3d at 795** (internal citations and quotation marks omitted). This aspect of copyright law applies to an "indirect profits" case where a copyrighted work is used to sell another product, to the same extent that it applies to a "direct profits" case where the infringer obtains profits by selling a copyrighted work in violation of the copyright. **336 F.3d at 796.**

The Court finds that TRL's legal proposition -- that even if it is liable to Blair, Blair is not entitled to any portion of TRL profits -- runs directly *contra* to **Andreas**, and TRL's motion for summary judgment on this issue will be denied.

15. TRL also contends that Blair is precluded from recovering punitive damages against it as a matter of law, because there is no evidence of intentional infringement and because the Copyright Act does not authorize punitive damages. TRL relies on **Bucklew v. Hawkins, Ash, Baptie & Co., LLP**, **329 F.3d 923 (7th Cir. 2003)**(Copyright Act contains no provision for punitive damages)

-23-

and **17 U.S.C. §301** ("all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title").

Blair concedes that TRL would not be liable for punitive damages on the basis of any conduct of TRL, but contends that it could be vicariously liable for punitive damages awarded against WTP. He offers no legal support for this proposition.

While there is no controlling Eighth Circuit case law comparable to **Bucklew**, the analysis in **Cass County Music Co. v. C.H.L.R., Inc.**, **88 F.3d 635 (8th Cir. 1996)**, suggests that the Copyright Act affords a statutory substitute for punitive damages, rather than common law punitive damages:

> Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy. . . . Thus it is plain that another role has emerged for statutory damages in copyright infringement cases: that of a punitive sanction on infringers.

**88 F.3d at 643** (emphasis and internal quotation marks omitted). The Court will, therefore, grant TRL's motion as to any award of non-statutory punitive damages.

16. Finally, TRL contends that the Complaint must be dismissed for failure to join indispensable parties. The gist of this argument is that Blair did not obtain model releases from the Pageant contestants he photographed, and did not join the models as parties. TRL fails to show how the failure to join the models

-24-

brings this case within **F.R.C.P. 19(a)**, and the Court will not formulate such an argument on its behalf. Summary judgment on this basis will be denied.

**IT IS THEREFORE ORDERED** that **TRL's Motion For Summary Judgment Against Plaintiff** (document #67) is **granted in part and denied in part.** The motion is **granted** insofar as it seeks summary judgment that Tanning Research Laboratories d/b/a Hawaiian Tropic is not liable to plaintiff on a theory of direct copyright infringement or a theory of breach of contract, and is not liable for common law punitive damages, and **denied** in all other respects.

**IT IS FURTHER ORDERED** that plaintiff's **Motion For Partial Summary Judgment On The Issue Of Vicarious Liability Of Tanning Research Laboratories** (document #70) is **denied.**

**IT IS FURTHER ORDERED** that **Separate Defendants World Tropic Productions, Inc.'s And Keevin Taylor's Motion For Summary Judgment** (document #74) is **granted in part and denied in part.** The motion is **granted** insofar as it seeks summary judgment that World Tropic Productions, Inc. d/b/a Miss Hawaiian Tropic and Keevin Taylor have no liability to plaintiff for the display of anners or posters containing copyrighted Images in Mexico, and **denied** in all other respects.

**IT IS FURTHER ORDERED** that **Separate Defendant Trends International, Inc.'s Motion For Summary Judgment** (document #77)

is **granted in part and denied in part.** The motion is **granted** insofar as it seeks summary judgment that Trends International, Inc., is not liable to plaintiff for any copyright infringement premised on the display of Images on banners or posters, and **denied** in all other respects.

IT IS FURTHER ORDERED that **Plaintiff's Second Motion For Partial Summary Judgment Of The Following Issues: (1) Whether Erick Blair Was An Independent Contractor; And (2) The Sales And Profits Of World Tropic Productions, Keevin Taylor, And Trends International, Inc. For The Miss Hawaiian Tropic Calendars Containing Plaintiff's Images For 2005 And 2006** (document #79) is **granted in part and denied in part.** The motion is **granted** insofar as it requests a determination that Erick Blair d/b/a Fotopixels was an independent contractor for World Tropic Productions, Inc. d/b/a Miss Hawaiian Tropic and Keevin Taylor, and **denied** in all other respects.

IT IS SO ORDERED.

/s/ Jimm Larry Hendren
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**